**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| S.O.S. Salson Inc., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 09-2159 (WHW) |
| | : | |
| ACADEMY CORPORATION, ACADEMY, | : | |
| LTD., ACADEMY MANAGING CO., | : | |
| L.L.C., ACADEMY SPORTS and | : | |
| OUTDOORS, jointly, severally, or in the | : | |
| alternative | : | |
| | : | |
| Defendants. | | |

**Walls, Senior District Judge**

       This action involves breach of contract and tort claims arising out of an agreement that Plaintiff, S.O.S. Salson, Inc. ("SOS"), entered into with Defendants, Academy, Ltd., d/b/a/ Academy Sports and Outdoors, and Academy Managing Co., L.L.C. (collectively "Academy"), to provide certain transportation and consolidation services.  Defendants move to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, request that the Court transfer the action to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).  Plaintiff opposes the motion.  Pursuant to Fed. R. Civ. P. 78, the Court decides the motion without oral argument.  The Court denies Defendants' motion to dismiss the action for improper venue.  The Court grants Defendants' request to transfer the action to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).

NOT FOR PUBLICATION

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff, a New Jersey corporation, is a retail distributor that provides transportation and consolidation services nationwide.  Defendants are Texas corporations and partnerships that own and operate sporting goods and apparel stores throughout the southeastern United States.  On September 16, 2002, Plaintiff and Defendants entered into a transportation agreement (the "Agreement") providing that Defendants would transport, on an ongoing basis, products that Defendants would purchase from various vendors to Defendants' distribution center in Katy, Texas.  The Agreement also provided that Plaintiff would perform certain consolidation services for Defendants.

The Agreement established three cities where Plaintiff would perform its consolidation services:  "It is the intent of this agreement that specific cities of consolidation will be established; those being for the initial start-up, Team Salson at 7373 Westside Ave, North Beren [sic], NJ, 07470[;] S.O.S. Salson Inc. at . . . Houston, TX[;] and SoCal Trucking at . . . Montebello California."  (Pl. Ex. A ¶ 2.)  In addition, the Agreement provided that Plaintiff would sort all freight in Houston, Texas, before transporting the freight to Defendants' distribution center in Katy, Texas:  "[Plaintiff] has rented for a period of 38 months . . . a 28,000 square foot building located at 3000 Brittmoore Drive, Houston, Texas.  [Plaintiff] has modified this building, per [Defendants'] instructions . . . for the express purpose of providing incoming shipment sortation for [Defendants] . . . prior to arrival [of the freight] at [Defendants'] distribution center in Katy, Texas."  (Pl. Ex. A ¶ 3.)  The Agreement established Texas law as the governing law:  "This Agreement shall be governed and construed in accordance with the laws of

NOT FOR PUBLICATION

the State of Texas.  Any applicable conflict of laws provision shall not be applied for the purpose of making any other state's law applicable."  (Pl. Ex. A ¶ 22.)

The parties disagree as to where the Agreement was negotiated.  Darren Weissberg, the Secretary/Treasurer of SOS, attests that the Agreement was "negotiated in New Jersey between Howard Weissberg and myself, on behalf of SOS, and James Tanner and Kal Pitel, on behalf of Defendants, at SOS's offices."  (Weissberg Aff. ¶ 9.)  But John Walsh, the Director of Domestic Logistics of Academy, attests that "(a) the transportation agreement at dispute in this lawsuit was solicited, negotiated, and executed in Katy, Texas; [and] (b) no Academy personnel traveled to New Jersey at any time to discuss the agreement."  (Walsh Aff. ¶ 6.)  The parties agree that, sometime in 2008, Defendants terminated the Agreement.

On April 7, 2009, Plaintiff filed its complaint against Defendants in the Superior Court of New Jersey, Hudson County, alleging in part that Defendants have (1) refused to pay monies due under the Agreement (Compl. ¶¶ 5-16); (2) caused Plaintiff to overpay for a certan cargo loss (Compl. ¶ 17-23); (3) wrongfully terminated the Agreement, causing losses to Plaintiff (Compl. ¶¶ 24-30, 38-44); and (4) negligently damaged certain trucks supplied by Plaintiff (Compl. ¶¶ 31-37).  Plaintiff seeks damages in an amount over $3 million.

On May 8, 2009, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Defendants now move to move to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer the action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).

NOT FOR PUBLICATION

**DISCUSSION**

**I.      Propriety of Venue**

        A.      <u>Standard of Review</u>

        Where jurisdiction is founded only on diversity of citizenship, venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(a).  If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

        A corporate defendant "resides" in "any judicial district where it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  A federal court sitting in diversity determines whether it has personal jurisdiction over a defendant by "apply[ing] the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution.  In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process."  <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 259 (3d Cir. 1998).  <u>See</u> N.J. Ct. R. 4:4-4.

-4-

NOT FOR PUBLICATION

Under the Due Process Clause, a court's exercise of jurisdiction over an out-of-state defendant can be specific or general.  Specific jurisdiction may be invoked if a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state" and the current claims "arise out of or relate to" the defendant's contacts with the forum.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).  If so, a court must decide whether its exercise of jurisdiction over the defendant is reasonable and comports with basic notions of "fair play and substantial justice."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).  General jurisdiction is based upon a defendant's "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

B.      Analysis

Defendants argue that venue is improper under 28 U.S.C. § 1391(a) because they are not subject to personal jurisdiction in this district.  Defendants argue that they do not have any general contacts with this district, noting that (i) there are no Academy stores, offices, warehouses, or storage facilities in New Jersey, (ii) there are no Academy officers, directors, employers, agents, or representatives located in New Jersey, (iii) Academy is not licensed or authorized to do business in New Jersey, (iv) Academy does not pay any taxes in New Jersey, and (v) Academy does not sell any products to New Jersey residents.  (Def. Br. at 3; Reply Br. at 3.)  Defendants also argue that, although Academy's website is accessible to New Jersey residents, the website does not target New Jersey residents or allow New Jersey residents (or

**NOT FOR PUBLICATION**

anyone else) to purchase Academy products via the website (which is only informational).
(Reply Br. at 2-3.)

    Defendants contend that they did not become subject to the specific jurisdiction of

this district by entering into the Agreement with Plaintiff.  Defendants assert that the Agreement

was "solicited, negotiated, and executed in Texas" (Def. Br. at 3 ).  Defendants also assert that

most of the activities contemplated under the Agreement were to be conducted in Houston, Texas

(where incoming freight would be sorted) and Katy, Texas (where the freight would ultimately be

brought).  Defendants contend that, although SOS consolidated some of Defendants' goods in

New Jersey, "without question, SOS's decision to consolidate goods in New Jersey was a

unilateral decision of SOS.  Academy did not request that SOS consolidate the goods in New

Jersey nor did it require SOS to consolidate the goods in New Jersey."  (Def. Reply Br. at 2.)

Defendants note that the Agreement specifically provided that Texas law would govern all

disputes arising from the Agreement.  (Def. Br. at 4.)

    Plaintiff counters that Defendants have purposefully availed themselves of this

district by contacting Plaintiff at its New Jersey offices to inquire about whether Plaintiff could

provide transportation and consolidation services for Defendants.  (Pl. Opp. at 1.)  Plaintiff

contends that, pursuant to the Agreement, Defendants have used Plaintiff's transportation and

consolidation services in New Jersey and placed orders at Plaintiff's New Jersey offices.  (Pl.

Opp. at 1.)  Plaintiff also contends that, contrary to Mr. Walsh's statement in his affidavit, the

Agreement was "negotiated, administered, and carried out in New Jersey."  (Pl. Opp. at 6.)

NOT FOR PUBLICATION

       The Court finds that Defendants have "purposefully availed" themselves of the State of New Jersey by entering into an agreement with SOS, a New Jersey resident.  See Collins v. Phelan, No. 06-CV-1704, 2006 U.S. Dist. LEXIS 45734, at *10 (D.N.J. June 29, 2006) ("Intentionally conducting business with forum state residents will satisfy the 'purposeful availment' requirement." (citing Toys "R" Us, Inc. v. Step Two, S.A., Imaginarium Net, S.L., 318 F.3d 446, 451-52 (3d Cir. 2003)).  Moreover, this lawsuit "arises out of" Defendants' contacts with New Jersey.  Plaintiff's alleged breach of contract claims arise from the contract entered into between Plaintiff and Defendant.  Lastly, the Court's exercise of specific jurisdiction over Plaintiff satisfies the due process requirements of "fair play and substantial justice" such that it is reasonable to require Defendants to litigate in this district.  Defendants knowingly contracted with Plaintiff, a New Jersey resident, to provide transportation and consolidation services on an ongoing basis.  The contract explicitly provided that one of three  "cities of consolidation" would be in New Jersey.  (Pl. Ex. A ¶ 2).  Plaintiff used the New Jersey consolidation center as contemplated by the contract, and Defendants placed orders at Plaintiff's New Jersey offices for services pursuant to the contract.  The Court's exercise of specific jurisdiction over Defendants is consistent with basic notions of "fair play and substantial justice." See also Apollo Tech Corp. v. Centrosphere Indus. Corp., 805 F. Supp. 1157, 1181-82 (D.N.J. 1982) ("[The] courts of New Jersey have exercised in personam jurisdiction wherever possible, with a liberal and indulgent view, if the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice.'").

NOT FOR PUBLICATION

       Because the Court finds that Defendants are subject to personal jurisdiction in this district, Defendants "reside" in this district under 28 U.S.C. § 1391(c).  As a result, Plaintiff's choice of venue is proper under 28 U.S.C. 1391(a).

## II.    Transfer of Venue

    A.    <u>Standard of Review</u>

       Even though the Court finds that Plaintiff's choice of this venue was proper under 28 U.S.C. 1391(a), the Court still has the authority to transfer this action to a different venue pursuant to 28 U.S.C. § 1404(a).  That statute provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the defendants.  <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 24 (3d Cir. 1970).

       In ruling on a motion under this provision, the court is free to consider "all relevant factors," and the Third Circuit directs district courts to a list of certain private and public interest factors.  <u>See Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: § 3848 (2d ed. 1986)).  With regard to the private interests, courts consider factors such as the (1) preferences of the parties, (2) convenience of the parties as indicated by their relative physical and financial condition, (3) convenience of the witnesses (to the extent that the witnesses may be unavailable for trial in one of the fora), (4) location of books and records (to the extent that the files could not be

NOT FOR PUBLICATION

produced in the alternative forum), and (5) where the claim arose.  Jumara, 55 F.3d at 879.  With

regard to the public interests, courts consider factors including a potential forum's local interest

in the controversy, public policies of the forum, and the trial judge's familiarity with the

applicable state law.  See Jumara, 55 F.3d at 879-80.

        The movant bears the burden of establishing the need for transfer.  Jumara, 55

F.3d at 879.  "It is black letter law that a plaintiff's choice of a proper forum is a paramount

consideration in any determination of a transfer request, and that choice 'should not be lightly

disturbed.'"  Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970) (quoting Ungrund v.

Cunningham Brothers, Inc., 300 F. Supp. 270, 272 (S.D. Ill. 1969)).  A defendant must show that

the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum"

and if  "when added together, the relevant private and public interest factors are in equipoise, or

even if they lean only slightly toward dismissal, the motion to dismiss must be denied."  Lacey v.

Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991).

    B.    Analysis

        To evaluate Defendants' request to transfer this action to the Southern District of

Texas pursuant to § 1404(a), the Court must first evaluate whether venue is proper in the

proposed transferee district.  Shutte, 431 F.2d at 22.  Here, it is undisputed that Plaintiff could

have filed this action in the Southern District of Texas.  Defendants are Texas corporations or

partnerships with their principle place of doing business in Texas.  Because Defendants are

subject to personal jurisdiction anywhere in Texas, venue is proper in the Southern District of

Texas.  See 28 U.S.C. § 1391(a), (c).

NOT FOR PUBLICATION

Next, the Court must evaluate whether private and public interest factors weigh in favor of transfer. The Court must bear in mind that the "plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. At the same time, the Court has "broad discretion to transfer an action under" 28 U.S.C. 1404(a) and is "not limited in [its] consideration to the factors enumerated" in that statute. Haidlan Capital LLC v. ARC Venture Holding, Inc., No. 08-CV-4195, 2008 U.S. Dist. LEXIS 84937, at *10 (D.N.J. Oct. 17, 2008).

    1.    The Private Interest Factors

Although Plaintiff's preference to litigate in this district is given weight as a private interest factor, the private interest factors as a whole weigh strongly in favor of transfer to the Southern District of Texas.

    a.    Convenience of Parties and Witnesses.

Plaintiff contends that it would suffer a "physical and financial hardship" if it were forced to litigate this case outside of New Jersey. (Opp. at 9.) Plaintiff asserts that "most, if not all" of its fact witnesses reside in New Jersey, including one "integral" witness currently recovering from a major surgery. (Opp. at 8.)

The Court finds that, although Plaintiff may be inconvenienced if forced to litigate in the Southern District of Texas, the inconvenience to Defendants of litigating in this district would be significantly greater. Defendants have no stores, officers, directors, employees, agents, or representatives in New Jersey. (Walsh Aff. ¶ 5.) Defendants' northernmost store is located in Joplin, Missouri. (Walsh Aff. ¶ 4.) The Court finds credible Defendants' assertion that all its potential party witnesses and relevant records are located in the Southern District of Texas, and

-10-

NOT FOR PUBLICATION

that their third-party witnesses are all located much closer to Texas than New Jersey.  To litigate in Plaintiff's preferred forum, Defendants would need to transport all of their witnesses and records to New Jersey, a state in which Defendants have no physical presence and no regular contacts.

In contrast, SOS is not devoid of a permanent presence in Texas.  According to SOS's website, SOS has two of seven total "terminal centers" located in Texas, including one in Houston.[1]  Further, the Court finds credible Defendants' assertion that SOS has "employees and other representatives in Houston, Texas that were involved in this dispute and have knowledge about the relevant facts at issue in this case."  (Def. Br. at 9.)  In addition, most of the relevant evidentiary materials would likely be found in Texas, where Defendants' have most of their offices and allegedly breached the contract.  On balance, this factor weighs in favor of transferring the action to the Southern District of Texas.

b.      Locus of Claims

"In a contract dispute, courts consider several specific factors that relate to where the claim arose, including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred."  Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, No. 08-cv-668, 2008 U.S. Dist. LEXIS 90720, at *14 (D.N.J. Nov. 7, 2008) (internal quotation marks omitted).  The parties disagree as to where the contract was negotiated and executed.  That factor aside, the claims at issue have a significantly stronger connection to the Southern District of Texas than to the District of New Jersey.  Defendants may

---

[1]  See http://sossalson.com/html/locations.htm (last visited September 17, 2009).

**NOT FOR PUBLICATION**

have placed orders at Plaintiff's New Jersey offices, and Plaintiff may have performed some

transportation and consolidation services in New Jersey, but the Agreement primarily required

Plaintiff to bring freight to a building in Houston, Texas (where Plaintiff would sort the freight),

and then deliver the freight to Defendants' distribution center in Kady, Texas.  Moreover,

Defendants' alleged breach of contract and tortious conduct most likely occurred in Texas and

nearby areas, as that is where Defendants' stores, corporate offices, and employees are located.

The locus of claims factor weighs strongly in favor of transferring this action to the Southern

District of Texas.

                     2..    <u>The Public Interest Factors</u>

                            a.      Familiarity with Applicable Law

 Courts recognize "the desire to have [a] case tried before judges familiar with the

applicable law."  <u>Tischio v. Bontex, Inc.</u>, 16 F. Supp. 2d 511, 521 (D.N.J. 1998).  Here, the

parties contractually agreed that Texas law would govern all disputes arising out of the

Agreement.  Texas courts are more familiar with Texas law than are courts in this district.  As a

result, Texas courts are better positioned to deal with this dispute.  <u>See also Riverview Medical

Center v. F.A. Davis Co.</u>, No. 08-3770, 2008 U.S. Dist. LEXIS 86694, at *7 (D.N.J. Oct. 27,

2008) ("Adjudication of the parties' claims will require detailed review and application of [the

proposed transferee state's] common law of contracts.  Such a detailed review may best be

undertaken by the court that sits in and more frequently applies the laws of [that state].").

NOT FOR PUBLICATION

        b.     Local Interest

        In general, "when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest." Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., No. 07-273, 2007 U.S. Dist. LEXIS 90857, at *17 (D.N.J. Dec. 11, 2007).  In addition, the burden of jury duty "ought not to be imposed upon the people of a community which have no relation to the litigation." Id. (quoting Hoffer v. Infospace.com, Inc., 102 F. Supp. 2d 556, 576 (D.N.J. 2000).

        As discussed, the breach of contract and tort claims at issue in this action have a significantly closer connection to the Southern District of Texas than to this district.  Although Plaintiff is a New Jersey resident, the contract primarily involved transporting freight for Defendants to a building in Houston for to be sorted, and then delivering that freight to Defendants' distribution center in Katy, Texas.  The Southern District of Texas has a greater local interest than the District of New Jersey in this action.  Moreover, New Jersey residents should not have to serve on a jury in this action that bears little connection to this state.  This factor weighs strongly in favor of transfer.

## CONCLUSION

        The majority of the private and public interest factors weigh strongly in favor of transfer to the Southern District of Texas.  The Court grants Defendants' request that the Court

**NOT FOR PUBLICATION**

transfer the action to the United States District Court for the Southern District of Texas pursuant

to 28 U.S.C. 1404(a).  The Court denies Defendants' motion to dismiss for improper venue.


September 23, 2009                                                    s/William H. Walls

                                                                  United States Senior District Judge