UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| S.O.S. SALSON, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-09-3145 |
| § | |
| ACADEMY CORPORATION, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Pending before the Court is the defendants', Academy, Ltd. d/b/a Academy Sports and Outdoors and Academy Managing Co., L.L.C.,[1] motion for summary judgment (Docket Entry No. 34). The plaintiff, S.O.S. Salson, Inc., filed a response in opposition (Docket Entry No. 40), to which the defendants filed a reply (Docket Entry No. 43). After having carefully evaluated the motion, the responses, the record and the applicable law, the Court determines that the defendants' motion is granted in part and denied in part.

**II.    Factual Background**

This dispute arises out of an alleged breach of contract. The plaintiff, a New Jersey corporation, is a retail distributor that provides transportation and consolidation services nationwide. The defendants are Texas business entities that own and operate sporting goods and apparel stores throughout the southeastern United States. On September 16, 2002, the parties entered into an agreement wherein the plaintiff agreed to accept compensation to transport, sort and consolidate various products that the defendants purchased from vendors. In November

---

[1] The defendants maintain that Academy Corporation (a party named in the caption of this case) was the predecessor in interest of Academy, Ltd.

2006, a shipment of the defendants' Nike merchandise worth $259,388.53 was stolen while the plaintiff was transporting it, and the plaintiff paid the defendants $249,388.53 for that stolen merchandise.[2]

On May 1, 2008, the defendants stopped using the plaintiff's sorting services, although they continued to engage the plaintiff in some business capacity. On August 20, 2008, the defendants sent the plaintiff a written notice of their intent to terminate the parties' agreement, effective September 20, 2008. The plaintiff filed its original complaint in the Superior Court of New Jersey, Hudson County, on April 7, 2009. The defendants timely removed the suit to the United States District Court of New Jersey based on diversity of citizenship, which court transferred the case to this Court pursuant to 28 U.S.C. § 1404(a).

## III. Contentions of the Parties

### A. The Plaintiff's Contentions

The plaintiff asserts six counts against the defendants arising out of the defendants' alleged breach of the parties' written agreement: (1) for unpaid transportation and consolidation services provided by the plaintiff to the defendants; (2) for $454,419.19 as the alleged reasonable value of those services; (3) for $249,388.53 as reimbursement of an alleged cargo claim overpayment for the November 2006 Nike merchandise theft; (4) for $1,290,000.00 that the plaintiff allegedly payed for equipment, warehouse and storage facilities leases in reliance on the defendants' continued business; (5) for $112,850.00 as reimbursement for the defendants' alleged negligent damage to the plaintiff's leased trailer equipment; and (6) for $750,000.00 in lost revenue due to the defendants' alleged breach of the agreement. The plaintiff also seeks attorney's fees, costs and interest on all six counts. The plaintiff claims that it did not give the defendants cause to terminate the agreement, that the defendants thus cannot terminate the

---

[2] The remaining $10,000.00 was covered by insurance.

agreement for cause, and that – even if they could – the defendants did not follow proper protocol in terminating the agreement.

As to counts one and two, the plaintiff alleges that it did not misclassify the defendants' inbound shipments, but rather only permissibly attempted to correct mislabeled freight shipments according to the parties' agreement. As to count three, the plaintiff contends that the loss of the November 2006 shipment of Nike goods occurred while being transported by a common carrier, Estes Express, utilized by the plaintiff, that Estes Express' insurance value liability on the shipment was limited to $10,000.00, and that therefore the plaintiff's liability on that loss should be limited to $10,000.00. In the alternative, the plaintiffs maintain that their liability under the agreement should not have exceeded $200,000.00. The plaintiff asserts that it paid the defendants the full Nike shipment value of $259,388.53 only under protest and out of fear of losing the defendants' business. The remaining three counts need no further explanation.

### B. The Defendants' Contentions

The defendants assert that the plaintiff's breach of contract allegations depend on the plaintiff's unwritten and unenforceable "understandings" of the parties' relationship. The defendants seek summary judgment, asserting that they cannot be liable for properly terminating the parties' agreement for cause. Specifically, the defendants contend that the plaintiff intentionally reclassified the freight being shipped and that it instructed the defendants' vendors to change their shipping documentation to reflect a higher, unauthorized rate, costing the defendants approximately $30,000.00 to $40,000.00 more per week. Further, the defendants assert that the plaintiff's breach of contract claim is not legally actionable because the defendants never promised the plaintiff any threshold volume of business. The defendants maintain that the plaintiff's damage claims for improper reimbursement, reliance, lost revenue, costs and

attorney's fees – even if valid – far exceed the amounts it is entitled to recover under their agreement and under common law.

## IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the

existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.  Analysis and Discussion

### A.  Termination of the Agreement

The Court determines that the plaintiff has no viable cause of action for the defendants' allegedly improper termination of the agreement. While the Court does determine that the

agreement was officially terminated on a date after August 20, 2008, the Court also determines that the defendants' insufficiently detailed termination letter is of no legal consequence. The parties' agreement allows for termination for cause upon thirty days written notice.[3] *See* [Docket Entry No. 34-1, Ex. A, § 4]. The defendants' letter of August 20, 2008, to the plaintiff did not notify the plaintiff of the defendants' intent to terminate the agreement for cause. The relevant portion of that letter reads:

> Pursuant to Section 2 of the Agreement, please accept this letter as [the defendants'] written notice of termination of the Agreement. Termination will be effective on 9/20/08.

(Docket Entry No. 34-10, Ex. J). Because the termination letter refers to an incorrect provision within the agreement (Section 2 rather than Section 4), and because the termination letter does not otherwise mention that the termination is for cause, the agreement's thirty-day termination-for-cause window was not triggered until the day the plaintiff was notified in writing that the defendants' termination letter was meant to be a termination-for-cause letter.

That being said, and the plaintiff's protests notwithstanding, the defendants cannot be liable for failing to use the plaintiff's services because the defendants never obligated themselves to give the plaintiff a particular volume or quantity of business. So even though the August 20, 2008, letter was not sufficiently detailed to constitute a proper termination letter under the agreement terms, the plaintiff can claim no breach of the agreement simply based on its unwritten understandings that it would continue to receive an unspecified amount of business from the defendants. The agreement's merger clause reinforces the Court's finding:

> The Agreement contains the entire understanding between the Parties. All Prior [sic] discussions, representations, negotiations and agreements are merged herein.

---

[3] The agreement does not define "cause," though the term commonly means "a legally sufficient reason." *See, e.g.*, BLACK'S LAW DICTIONARY (9th ed. 2009).

> This Agreement may not be varied or amended except in writing executed by duly authorized representatives of each of the Parties to this Agreement.

(Docket Entry No. 34-1, Ex. A., § 15). Merger clauses such as this are valid and enforceable under Texas law. *See, e.g., In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010). The plaintiff may not rely on vague "understandings" not stated in the agreement, particularly when the express language of the merger provision forbids the introduction of such an "understanding." Therefore, the Court determines that the plaintiff cannot recover damages for the defendants' allegedly improper termination of the agreement.

### B. The Plaintiff's Six Counts

#### 1. First and Second Counts: Unpaid Value of Transportation Services

At issue is whether the defendants are required to pay the plaintiff some or all of the $454,419.19 that the plaintiff seeks as the purported value of allegedly unpaid transportation services. The parties dispute the amount actually due and owing under the contract. This factual dispute exists regardless of the "for cause" termination issue and may not be resolved via summary judgment. *See*, Fed. Rule Civ. P. 56. Neither side has proven whether it is entitled, as a matter of law, to summary judgment on this issue, hence, the Court denies summary judgment on these two counts.

#### 2. Third Count: Reimbursement for Cargo Claim Payment

At issue is whether the defendants must reimburse some or all of the $249,388.53 that the plaintiff paid the defendants as a result of the November 2006 Nike merchandise theft. The Court determines that the plaintiff's payment of the $249,388.53 to the defendants for that loss constituted a waiver of its right to contest responsibility for that loss, and that the plaintiff may

not now take back the money that it has already given the defendants. The applicable portion of the parties' agreement states:

> [The plaintiff] shall have full cargo liability, not to exceed $200,000 per truckload, nor to exceed the value of the insurance as provided by common carriers and contract carriers as utilized by the [plaintiff].

(Docket Entry No. 34-1, Ex. A, § 8(A)(2)). However, despite that language, the plaintiff waived its right to any portion of the now-disputed $249,388.53 by acquiescing to the defendants' request that the plaintiff accept full responsibility and render payment for the value of the stolen merchandise.

Under Texas law, waiver occurs when a party intentionally relinquishes a known right or engages in "intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citing *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). Waiver is not limited by the rules of contract, and "[i]t need not be founded upon a new agreement or be supported by consideration." *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 358 (Tex. 1971). Furthermore, "waiver . . . may be established as a matter of law 'when the facts and circumstances are admitted or clearly established.'" *Martin v. Birenbaum*, 193 S.W.3d 677, 681 (Tex. App. – Dallas 2006, pet. denied) (quoting *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999)). Because the Court determines that the plaintiff waived its right to the $249,388.53 by giving that money to the defendants, the Court grants the defendants' motion for summary judgment with respect to this reimbursement count.

### 3. Fourth Count: Payment of Equipment, Warehouse and Storage Leases

At issue is whether the defendants must compensate the plaintiff for the long term leases and rentals that it allegedly entered for the defendants' benefit. The Court grants the defendants'

motion for summary judgment with respect to this count. Under the express terms of the agreement, the defendants are liable only for the closing costs associated with the Brittmoore facility, and even then only if the defendants had decided to terminate the parties relationship within thirty-eight months. The agreement states:

> [The plaintiff] has rented *for a period of 38 months,* commencing September 1, 2002, a 28,000 square foot building located at 3000 Brittmoore Drive, Houston, Texas. [The plaintiff] has modified this building, per the [defendants'] instructions; adding doors, removing offices, etc., for the express purposes of providing incoming shipment sortation for [the defendants]; palletizing and shrink wrapping all shipments by P.O. #, size, color, and style prior to arrival at [the defendants'] distribution center in Katy, Texas.
>
> In the event [the defendants] wish[] to discontinue the sortation, then [the defendants] will become responsible for all termination expenses *associated with the closing of the facility.*

(Docket Entry 34-1, Ex. A, § 3 (emphasis added)). Not only does this provision limit the defendants' liability to the Brittmoore facility, it establishes liability for a thirty-eight month period that has long since expired.

The parties to an agreement may contractually specify the remedies available to redress injuries that arise from a breach of that agreement. *See, GT & MC, Inc. v. Texas City Ref., Inc.*, 822 S.W.2d 252, 256 (Tex. App. – Houston [1st Dist.] 1991, writ denied); *see also, Sowell v. Natural Gas Pipeline Co. of Am.*, 604 F. Supp. 371, 380 (N.D. Tex. 1985), aff'd 789 F.2d 1151 (5th Cir. 1998) (noting that under Texas law, parties may agree to remedy for breach and that the remedy will be enforced so long as it is not illegal or against public policy).

The parties agreed to limit the available closing cost remedies for termination of sorting services to the costs associated with closing the Brittmoore facility if termination occurred within a now-lapsed thirty-eight month period. Thus, the Court holds that the plaintiff may not recover for the purported long term leases it entered into for equipment, warehousing and storage space

at Brittmoore and all of its other facilities. Accordingly, the Court grants the defendants' summary judgment motion on this count.

### 4. Fifth Count: Leased Trailer Equipment

At issue is whether the defendants must compensate the plaintiff for negligently damaging the plaintiff's trailers. The defendants have failed to respond to this claim or to address this claim in their motion. The "failure to brief an argument in the district court waives that argument in that court." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 & n.10 (S.D. Tex. 2003) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2000); *see also*, S.D. Tex. Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition."). Accordingly, the Court denies summary judgment on this count.

### 5. Sixth Count: Lost Revenue

At issue is whether the defendants must compensate the plaintiff for its purported lost revenue resulting from the defendants' alleged breach of the agreement. The Court determines that the plaintiff may not recover lost revenue from the defendants as a matter of law. In addition to the analysis propounded above in Section **V.A.**, under Texas law, "the correct measure of damages is lost net profits rather than gross revenues. *See*, Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992). To recover for lost profits, a party must prove the amount of lost profits "by competent evidence with reasonable certainty." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001) (internal citations omitted). "At a minimum, opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained with reasonable certainty. *Helena Chem. Co.*, 47 S.W.3d at 504 (internal citation omitted).

A party who offers only evidence of gross revenues without offering evidence of expenses incurred cannot recover lost profit damages. *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 772 (Tex. App. – Houston [1st Dist.] 2004, no pet.) (stating this proposition as the mainstream trend in Texas). Further, a party who presents evidence of lost profits without indicating whether the evidence shows gross revenue or the net profit margin cannot recover lost profits. *Phan*, 137 F.3d at 772. Therefore, the Court grants the defendants' summary judgment motion on this count.

### C. Attorney's Fees

At issue is whether the defendants must pay some or all of the plaintiff's attorney's fees. The Court holds that the plaintiff cannot recover attorney's fees. Section 23 of the parties' agreement states:

> Should any litigation be commenced between the Parties concerning any provision of this Agreement, the rights and duties of any entity in relation thereto, or the interpretation of any provision hereof, each Party shall pay and be responsible for its own attorney's fees and costs.

(Docket Entry 34-1, Ex. A, § 23). Courts are generally bound by the parties' agreement regarding attorney's fees. *See*, *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 n.7 (Tex 2009) (internal citations omitted). Under Texas law, a contractual provision precluding recovery of attorney's fees trumps any statute, ordinance or equitable doctrine that would otherwise award the prevailing party with attorney's fees. *See*, *Intercontinental Group*, 295 S.W.3d at 653 (internal citations omitted); *see also*, Section **V.B.3.**, *supra*. Accordingly, the Court grants the defendants' summary judgment motion on this issue.

### VI. Conclusion

Based on the foregoing analysis and discussion, the defendants' motion for summary judgment is granted in part and denied in part. Specifically, the Court denies the defendants'

motion with respect to the plaintiff's counts one and two (allegedly unpaid value of transportation services) and five (reimbursement of leased trailer equipment). The Court grants the defendants' motion on all other issues.

    It is so **ORDERED**.

    SIGNED at Houston, Texas this 4th day of November, 2010.

                                                    Kenneth M. Hoyt
                                                    United States District Judge